UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>            Plaintiff,<br><br>      v.<br><br>D.L., a minor,<br><br>            Defendant. | NO. CV 06-07135 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Los Angeles Unified School District (the "District") appeals two legal conclusions contained in a decision involving defendant and former District student D.L. ("D.L.") rendered by Administrative Law Judge Eileen M. Cohn (the "ALJ"). (District's Opening Brief ("DOB") at 1).  The decision was issued on August 8, 2006, following a due process hearing under California special education law, Education Code section 56303 et seq and the Individual With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  (LAUSD[1] 01-016).

---

[1] The District lodged the Administrative Record with this Court on August 17, 2007.  The pages of the Administrative Record are labeled "LAUSD 01, LAUSD 02, etc."  For consistency, this Court will utilize the

On November 7, 2006, the District filed its complaint in district court challenging the ALJ's decision. On June 12, 2007, the parties consented, pursuant to 28 U.S.C. § 626, to proceed before the undersigned Magistrate Judge. The parties filed cross-motions in August and October 2007, respectively, and the Court held a hearing on the motions on November 20, 2007.

## THE DISTRICT'S CONTENTIONS

The District seeks to reverse the ALJ's conclusion that the district was "duty-bound" to assess a general education student when a parent referred the student for an initial special education assessment. The District also seeks review of the ALJ's decision requiring the District to fund an independent educational evaluation ("IEE") of defendant D.L. (DOB at 01).

According to the District, defendant D.L. was a five-year old boy who spent three years in foster care prior to moving to Los Angeles. D.L. was reunited with his mother just prior to beginning kindergarten at a District elementary school. (DOB at 01). D.L. had a difficult adjustment to kindergarten. He frequently acted out while at school. His mother requested an initial special education assessment. The District denied the request because D.L. had limited school experience and there was no history of general education interventions. D.L.'s mother subsequently removed him from the school. (Id.).

---

same terms when referring to the administrative record.

The District disputes that it was "duty-bound" to assess D.L. as there is no "legal requirement that [the District assess a student] based solely on parent request." (DOB at 1). The District argues that its duty arises when it "has knowledge of facts tending to establish a suspected disability." (DOB at 1-2). Moreover, the District contends that it is required to exhaust general education support and behavioral interventions before referring a child for special education. (DOB at 2). IDEA protections are available only where modifications to the regular education program are ineffective. (Id.).

Finally, the District contends that the ALJ erred by ordering that the District pay for an IEE of D.L. (Id.). According to the District, a parent may request an IEE at public expense only when the parent disagrees with a school district assessment. (Id.). When a parent requests an IEE, a school district may either agree to fund the IEE or the school may decline to pay for the IEE and seek a due process hearing to defend its decision. (Id.). Again, according to the District, because there was no district assessment to begin with, D.L. did not have a right to a district-funded IEE. (Id.).

**D.L.'S CONTENTIONS**

D.L. seeks to uphold the ALJ's conclusion that the District was duty-bound to conduct an initial assessment based upon a parent's referral. (D.L.'s Reply Brief ("DLRB") at 1). D.L. also seeks to affirm the ALJ's order mandating that the District fund an IEE of D.L. (Id.).

**THE ALJ'S DECISION**

On May 22-24, 2006, the ALJ held a hearing on D.L.'s case. (LAUSD at 01). At the hearing, oral and documentary evidence was received. The ALJ identified five issues:

(1) Whether the District failed to fulfill its "child find" obligations;

(2) Whether the District failed to assess D.L. in all areas of suspected disability;

(3) Whether the District denied D.L. a free and appropriate public education ("FAPE") from October 12, 2005 to January 23, 2006, by failing to design and provide an educational program to meet his unique individual needs;

(4) Whether the District violated the procedural rights of D.L. and his parents by failing to provide prior written notice of its refusal to evaluate D.L. or by failing to provide copies of D.L.'s educational records;

(5) Whether, as a consequence of District's actions in 1-4, above, D.L. was entitled to (a) an IEE at public expense and (b) compensatory education.

(LAUSD at 02-03).

The ALJ found that D.L. was within the District's jurisdiction from October 1, 2005 until January 23, 2006. (LAUSD at 03). On January 24, 2006, D.L.'s mother moved with D.L. to Long Beach, California and no longer resided within the District's jurisdiction. (Id.).

The ALJ reviewed the history of D.L.'s move to the District and the school-related events that followed. After reviewing all the evidence and the applicable law, the ALJ reached the following conclusions:

(1)  The District did not fail to fulfill its "child find" obligations (LAUSD at 012);

(2)  The District failed to assess D.L. in all areas of suspected disability (Id. at 013);

(3)  The District did not fail to provide D.L. a FAPE by failing to design and implement an educational program to meet his unique and individual needs (Id.);

(4)  The District did not violate D.L.'s parent's procedural rights by failing to provide sufficient prior written notice of its refusal to evaluate D.L., or by failing to provide copies of D.L.'s educational records (Id. at 014);

(5)(A) D.L. is entitled to an IEE at public expense (Id.).

\\
\\
\\

(5)(B) D.L. is not entitled to compensatory education. (LAUSD at 015).

In her analysis of Issue No. 2, the ALJ wrote:

**Issue No. 2: District Failed To Assess Student In All Areas Of Suspected Disability**

As set forth in factual findings 4-16, 19, 20-21, District failed to assess Student in all areas of suspected disability. District received Parent's unambiguous written notice requesting an initial special education assessment. Parent also had a direct conversation with Principal Gideon where she requested that Student be assessed. The District was duty-bound to conduct an initial assessment based upon Parent's referral. District was not entitled to ignore Parent's request for an initial assessment and reject an assessment based upon its own superficial investigation. The District's obligation to assess was mandated by law and further supported by facts. Student was still enrolled in kindergarten when he entered Shields full time on October 31, 2005, and remained in the District until January 23, 2006. If District had conducted its assessment as it should have, it would have fully investigated Student. It would have obtained a complete profile of Student while he was at Shields.

3.  As set forth in factual findings 16-20, District's contention that its policies and practices mandated that it reject Parent's referral is without merit. District's contention that it can reject a Parent's <u>initial</u> referral conflicts with the California Education Code and is not supported by its own response form. California Education Code specifically provides that a parent's referral <u>shall</u> initiate the assessment process. District's form allows administrators to indicate that they reviewed previous assessments of students. Clearly, a District is justified in rejecting repeated requests for assessments, after an initial assessment has been done. School districts are not obligated to continually assess and reassess pupils. The IDEA and the California Education Code provide procedures for parents to object to recent assessments, including, providing that parents can obtain their own independent assessment at public expense. In addition, the IDEA requires an annual review of a pupil's progress and a triennial assessment. However, neither the IDEA nor the California Education Code allows a school district to summarily reject a parent's <u>initial</u> referral request. The governing statutory authority does not prohibit school districts from entering into an agreement with the Parent to pursue an SST instead of conducting an assessment. Further, the IDEA provides that the time for completing an assessment can be extended by agreement. Manhattan did not enter into any agreements with Parent.

    Instead, its administrators unilaterally denied the assessment.

(LAUSD at 13).

In her analysis of Issue No. 5(A), the ALJ wrote:

> **Issue No. 5(A): Student Is Entitled To An Independent Evaluation At Public Expense**
>
> 6. As set forth in factual findings 1, 16 and 23, Student is entitled to an independent evaluation at public expense. District was required to provide an initial assessment of Student in all areas of suspected disability. District failed to assess Student. Student is generally not entitled to an independent evaluation at public expense unless District has performed an assessment and Student disagrees with the assessment. However, Student is no longer in the District and it would be inappropriate for District to assess Student since it will not be responsible for conducting an IEP and providing Student a FAPE. Long Beach agreed to assess Student, but there is no evidence that Long Beach assessed Student. Accordingly, Student is entitled to an independent evaluation at public expense which Student can provide to Long Beach for consideration, if applicable, in its IEP.

(LAUSD at 14).

## DISCUSSION

**A. Governing Law**

The IDEA was enacted to ensure that disabled students receive an appropriate education. Under the IDEA, students with disabilities have the right to a free appropriate public education ("FAPE")(20 U.S.C. § 1412(a)(1)(a); Cal. Ed. Code § 56000 et seq.). FAPE is defined as special education and related services that have been provided at public expense, etc. (20 U.S.C. § 1401(9); Cal. Code Regs. tit. 5, § 3001(o); see also DLRB at 1). Both federal and California law recognize that parents may request an initial evaluation or assessment. (20 U.S.C. §1414(a)(1)(B); Cal. Code Regs. tit. 5, § 3021(a)). When a school district denies a child a FAPE, the child is entitled to relief that it appropriate. (20 U.S.C. §1414(a)(1)(B); Cal. Code Regs. tit. 5, § 3021(a)).

To prevent districts from "over-identifying" students as disabled, Congress mandated that states develop effective teaching strategies and positive behavioral interventions to prevent over-identification and to assist students without an automatic default to special education. (20 U.S.C. § 1400(c)(5)(f)). Schools, however, are charged with the "child find" duty of locating, identifying and assessing all children who reside within its boundaries who are in need of special education and related services. (20 U.S.C. § 1400(a)(3); Cal. Educ. Code §§ 56300-56303). If a school district suspects that a general education student may have a disability, it must conduct a special education assessment to determine whether the student qualifies for special education

services.  (20 U.S.C. § 1414(a)(1)(a); Cal. Educ. Code § 56320). However, a student "shall be referred for special education instruction and services only after the resources of the regular education program have been considered, and where appropriate, utilized." (Cal. Educ. Code § 56303).

A parent, teacher, service provider or foster parent may refer a student for a special education assessment.  (Cal. Educ. Code § 56029). A "referral for assessment means any written request for assessment to identify an individual with exceptional needs . . ." as part of "child find" responsibilities, school districts must have procedures in place to utilize referrals from teachers and parents.  (Cal. Educ. Code § 56302).  However, such procedures "shall be coordinated with school site procedures for referral of pupils with needs that cannot be met with modification of the regular instructional program."  (Id.).

A school district cannot provide special education services to a student unless the student's individualized education program ("IEP") team, upon reviewing an assessment, finds the student eligible under one of the disabling conditions such as emotional disturbance, specific learning disability, other health impairment, orthopedic impairment, autism or mental retardation.  (Cal. Educ. Code § 56026(a)).  The IEP team must also find the impairment "requires instruction, services, or both which cannot be provided with modification of the regular school program."  (Cal. Educ. Code § 56026(b)).

\\
\\
\\

Parents have the right to an IEE at public expense if the parent disagrees with an assessment obtained by the school district and the school district does not prove its assessment is appropriate in a due process hearing. (Cal. Educ. Code § 56329(b); 34 C.F.R. § 300.502.)

Courts have found that parents are entitled to an IEE at public expense if parents can show that they disagreed with the school district's assessment and proved that such an assessment was inappropriate. Holmes v. Millcreek Township School District, 205 F.3d 583, 559-91 (3d Cir. 2000). This Court reviews the administrative proceeding with deference, recognizing the expertise of the administrative agency. Parents of Student W. v. Puyallup School District, No. 3, 31 F.3d 1489, 1494 (9th Cir. 1994).

**B.  Whether The District Was "Duty-Bound" To Provide An IEE For D.L. Is Now Moot Because The IEE Has Been Performed**

Article III, section 2 of the Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. In other words, throughout the litigation, the petitioner, "must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990). Article III denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S. Ct. 402, 30 L. Ed. 2d 413 (1971).

There is a well-established exception to the mootness doctrine where a claim is "capable of repetition yet evading review." Sacramento City United School Dist., Bd. of Educ. v. Rachel H., 14 F.3d 1398, 1403 (9th Cir. 1994)(citation omitted). This exception requires that a plaintiff show that there is a reasonable expectation that he, and not a third party, will again suffer a deprivation of legal rights. Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); Lee v. Schmidt-Wenzel, 766 F.2d 1387, 1390 (9th Cir. 1985). The "capable of repetition" doctrine is only applicable in exceptional circumstances and only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality. Lyons, 461 U.S. at 109. As is discussed more fully below, this exception does not apply here and, as such, the mootness doctrine bars review of the ALJ's "duty-bound" finding.

The "duty-bound" issue is moot, in part, because D.L.'s family moved to Long Beach in March 2006. (LAUSD at 08). D.L.'s parent enrolled D.L. in the Long Beach Unified School District. (Id.). Long Beach agreed to assess D.L. (Id.). An IEE was conducted on D.L. (DLRB at 7). Following the IEE, it was determined that D.L. should receive special education services, including in-school counseling.[2] (Id.). Based on the record before the Court, it appears that D.L. has not returned to the LAUSD nor is there any evidence before the Court that D.L. intends to return to the LAUSD.

---

[2] In her decision, the ALJ noted that LAUSD offered to assess D.L. after receipt of D.L.'s due process complaint. (LAUSD at 08, n.9). LAUSD also asserted that it first learned of D.L.'s ADD diagnosis in the Complaint and that it proposed an assessment after learning of D.L.'s ADD diagnosis. (Id.).

As D.L. has received the IEE assessment he requested, the question of whether the LAUSD was "duty-bound" to assess him upon parental referral is no longer a live case or controversy. D.L. has not challenged the assessment that was performed or argued that he needs a second assessment. He no longer lives in the Los Angeles area and has not presented any evidence that he intends to return to that school district. As such, the question of whether the LAUSD was duty-bound to provide an assessment to D.L. has been mooted out by subsequent events. Moreover, it is not a claim subject to repetition as D.L. no longer lives in the Los Angeles school district. The ALJ's reasoning for her decision to order an assessment is therefore no longer a live issue for this Court to review. Because the issue is moot, the Court DENIES LAUSD's motion to the extent it seeks review of the ALJ's determination that it was duty-bound to assess D.L.

**C.   There Is No Statutory Duty For LAUSD To Fund The IEE**

As the ALJ found, and D.L. concedes, D.L. is not entitled to an independent evaluation at public expense unless LAUSD has provided an assessment and D.L. disagrees with the assessment. (LAUSD at 14; DLRB at 13; see also Cal. Educ. Code § 56329(b); 34 C.F.R. § 300.502). As LAUSD never provided an assessment of D.L., no statutory right to public reimbursement of his assessment arose. To the extent LAUSD's Motion seeks a finding that D.L. has no right to an assessment at public expense under either Cal. Educ. Code § 56329(b) or 34 C.F.R. § 300.502, this Court agrees and GRANTS the Motion.

\\
\\

**D.  LAUSD Has An Equitable Obligation To Fund The IEE**

LAUSD argues that, if there is no District assessment to disagree with, "the District is under no obligation to pay for an IEE." (DOB at 20). Furthermore, LAUSD argues that even if the ALJ had the authority to order the District to conduct an assessment, there was "no basis to order the assessment be conducted by an independent agency." (Id.). LAUSD appears to contend that if the ALJ intended to order an assessment, it should have been performed by LAUSD and not an independent agency. (DOB at 21).

The Court has reviewed the submissions of the parties and yet found no evidence that the assessment was, in fact, performed by an independent agency. On the record before the Court, it is unclear exactly when and by whom the assessment was performed. However, it does appear that it was performed at the request of the Long Beach School District, after D.L.'s parent requested the assessment. (DLRB at 7; LAUSD at 8).[3] When questioned about the assessment during the hearing, counsel informed this Court that the assessment had been conducted, but neither Long Beach School District nor D.L.'s parents had paid the individual who performed the assessment. The issue, then, before the

---

[3] At paragraph 23 of the ALJ's decision, she noted:

> In March, 2006, Parent enrolled Student in the Long Beach Unified School District (Long Beach). Parent requested that Long Beach assess Student. Long Beach initially declined on the ground that Student was not a behavior problem. Long Beach eventually agreed to assess Student. At the time of the due process hearing Student had not been assessed.

(LAUSD at 08).

14

Court is whether Long Beach School District, D.L., or LAUSD should pay for the assessment.

Under the IDEA, the district court has the power to "grant such relief as [it] determines is appropriate." Puyallup, 31 F.3d at 1496 (citing 20 U.S.C. § 1415(e)(2)). As noted by the Supreme Court in School Comm. of Burlington v. Department of Education, 471 U.S. 359, 374, 105 S. Ct. 1996, 2005, 85 L. Ed. 2d 385 (1985), "[E]quitable considerations are relevant in fashioning relief." Furthermore, the Ninth Circuit has observed that "the conduct of both parties must be reviewed to determine whether relief is appropriate." W.G. v. Board of Trustees of Target Range School Dist. No. 23, 960 F.2d 1479, 1486 (9th Cir. 1992). A parent has an equitable right to reimbursement when a school district has failed to provide a free appropriate public education. Id.

Here, LAUSD offered an assessment after it was served with the due process complaint and asserted that it would have conducted the assessment earlier, had it known of D.L.'s ADD diagnosis. (LAUSD at 08). The ALJ clearly found that LAUSD had an obligation to assess D.L. based on factors beyond the parent's request, such as D.L.'s behavior issues upon arrival at Manhattan School. The ALJ found it significant that, between October 17 and October 25, 2005, D.L. was disciplined by his teacher on four occasions. (LAUSD at 04). The teacher's notes show that D.L. engaged in significant disruptive and behavior, i.e., roaming the playground, falling out of his chair, making noise, failing to follow directions, walking on tables, and tearing up other students' work. (LAUSD at 04-05). Although this Court is not reaching the legal

issue of whether LAUSD was "duty-bound" to assess D.L. upon the parent's request, the parties have not challenged the factual findings made by the ALJ. Based on the facts pertaining to D.L.'s behavior while at Manhattan School, the repeated requests by D.L.'s mother for an assessment, D.L.'s ADD diagnosis (which LAUSD likely could have determined from further observation of D.L.), LAUSD's admission that an assessment would have been done had it been aware of D.L.'s ADD diagnosis, and Long Beach's determination that D.L. should be assessed, it appears at least arguable the LAUSD should have performed an assessment of D.L. while he was still a student within LAUSD's jurisdiction.

Considering the parties' conduct and the factual record presented in the administrative record, the Court finds that equitable concerns require LAUSD to be responsible for the funding of D.L.'s IEE. As such, LAUSD's Motion, to the extent it seeks to reverse the ALJ's order requiring LAUSD to fund an IEE for D.L. is DENIED. LAUSD is ORDERED to make arrangements for payment of the assessment of D.L. performed after D.L. moved to the Long Beach school district.

## CONCLUSION

As stated above, LAUSD's Motion is GRANTED in part and DENIED in part. To the extent LAUSD seeks to reverse the ALJ's determination that it was "duty-bound" to conduct an assessment upon D.L.'s parent's referral, the Motion is DENIED as moot. To the extent LAUSD seeks to affirm the ALJ's finding that it had no statutory duty to fund an IEE, the Motion is GRANTED. To the extent LAUSD seeks to reverse the ALJ's

decision that LAUSD had an equitable obligation to pay for D.L.'s IEE, the Motion is DENIED.  LAUSD is ORDERED to make arrangements for payment of the assessment performed on D.L. after he moved to Long Beach within thirty days of the date of this Memorandum Decision and Order.

IT IS SO ORDERED.

DATED: March 10, 2008.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE